Nos. 22-5104, 22-5125

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

———————————

S.C.,

Plaintiff-Appellee/Cross-Appellant

v.

METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON
COUNTY, TENNESSEE,

Defendant-Appellant/Cross-Appellee

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

———————————

BRIEF FOR THE UNITED STATES AS AMICUS CURIAE
SUPPORTING PLAINTIFF-APPELLEE/CROSS-APPELLANT
AND URGING AFFIRMANCE IN PART AND VACATUR IN PART
ON THE ISSUES ADDRESSED HEREIN

———————————

LISA BROWN
  General Counsel

VANESSA SANTOS
  Attorney
  U.S. Department of Education
  Office of the General Counsel
  400 Maryland Ave., S.W.
  Washington, D.C.  20202-0001

KRISTEN CLARKE
  Assistant Attorney General

ERIN H. FLYNN
JASON LEE
  Attorneys
  U.S. Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 598-1317

**TABLE OF CONTENTS**

**PAGE**

INTEREST OF THE UNITED STATES .................................................................. 1

STATEMENT OF THE ISSUES.......................................................................... 2

STATEMENT OF THE CASE............................................................................. 4

    1.    *Deliberate-Indifference Claims Under Title IX* ................................... 4

    2.    *Factual Background* .......................................................................... 5

        a.    *The Practice Of "Exposing" At Metropolitan Nashville Public Schools* ............................................................ 5

        b.    *S.C. Suffers Retaliatory Harassment For Assisting Her School's Investigation Into An Alleged Sexual Assault And Related Video* ....................................................... 6

    3.    *Procedural History* ........................................................................... 9

SUMMARY OF ARGUMENT .......................................................................... 13

ARGUMENT

    I    THE COURT SHOULD AFFIRM THE DISTRICT COURT'S RULING IN S.C.'S FAVOR ON HER DELIBERATE-INDIFFERENCE CLAIM BASED ON STUDENTS' RETALIATORY THREATS AND HARASSMENT ............................................................................... 16

        A.    *The District Court's Findings Of Fact Show That S.C. Proved The Elements Of Her Claim* ........................ 16

        B.    *The County's Arguments Are Meritless* ................................... 22

**TABLE OF CONTENTS (continued):**                                   **PAGE**

II    THE COURT SHOULD VACATE THE DISMISSAL
OF S.C.'S OTHER TITLE IX CLAIMS AND REMAND
FOR RECONSIDERATION OF THOSE CLAIMS AND
THE DISTRICT COURT'S DAMAGES AWARD............................ 28

CONCLUSION ........................................................................................ 30

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**CASES:**                                                                                  **PAGE**

*Beydoun* v. *Sessions*, 871 F.3d 459 (6th Cir. 2017)..................................................17

*Cummings* v. *Premier Rehab Keller, P.L.L.C.*,
    142 S. Ct. 1562 (2022)........................................................................ 4, 15, 29

*Davis* v. *Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999) ............................. *passim*

*Doe* v. *Metropolitan Gov't of Nashville & Davidson Cnty.*,
    35 F.4th 459 (6th Cir. 2022),
    petition for cert. pending, No. 22-423 (filed Nov. 3, 2022) .............. 13, 28-29

*Doe* v. *School Dist. No. 1, Denver*,
    970 F.3d 1300 (10th Cir. 2020) ......................................................................19

*Feminist Majority Found.* v. *Hurley*, 911 F.3d 674 (4th Cir. 2018)........ 5, 20, 23-24

*Foster* v. *Board of Regents of Univ. of Mich.*,
    982 F.3d 960 (6th Cir. 2020) (en banc) .....................................20, 24-25, 27

*Jackson* v. *Birmingham Bd. of Educ.*, 544 U.S. 167 (2005)......................4-5, 18-19

*Kollaritsch* v. *Michigan State Univ. Bd. of Trs.*,
    944 F.3d 613 (6th Cir. 2019),
    cert. denied, 141 S. Ct. 554 (2020)........................................................ *passim*

**STATUTES:**

Education Amendments Act of 1972 (Title IX)
    20 U.S.C. 1681 *et seq.* ....................................................................................1
    20 U.S.C. 1681(a) ....................................................................................4, 18

**REGULATION:**

Exec. Order No. 12,250, 3 C.F.R. 298 (1980 comp.)................................................1

**RULE:**                                                                                    **PAGE**

Fed. R. App. P. 29(a) ..................................................................................2

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

———————————

Nos. 22-5104, 22-5125

S.C.,

Plaintiff-Appellee/Cross-Appellant

v.

METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON
COUNTY, TENNESSEE,

Defendant-Appellant/Cross-Appellee

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

———————————

BRIEF FOR THE UNITED STATES AS AMICUS CURIAE
SUPPORTING PLAINTIFF-APPELLEE/CROSS-APPELLANT
AND URGING AFFIRMANCE IN PART AND VACATUR IN PART
ON THE ISSUES ADDRESSED HEREIN

**INTEREST OF THE UNITED STATES**

The United States has a substantial interest in this appeal, which concerns

the circumstances in which a school may be held liable for damages in a private

action under Title IX of the Education Amendments of 1972, 20 U.S.C. 1681 *et

seq.* The Department of Justice, which coordinates the implementation and

enforcement of Title IX's nondiscrimination provisions across federal executive

agencies, see Exec. Order No. 12,250, 3 C.F.R. 298 (1980 comp.), and enforces

Title IX against recipients of funding from the Department, has an interest in that question. So, too, does the Department of Education, which enforces Title IX against its funding recipients. Additionally, the United States has participated as amicus curiae in multiple cases addressing the extent of schools' liability for damages under Title IX. See, *e.g.*, U.S. Br. as Amicus Curiae, *Fairfax Cnty. Sch. Bd.* v. *Doe*, cert. denied, 2022 WL 17085176 (2022) (No. 21-968); U.S. Br. as Amicus Curiae, *Brown* v. *State of Arizona*, No. 20-15568 (9th Cir. filed Aug. 8, 2022).

The United States files this brief under Federal Rule of Appellate Procedure 29(a).

## STATEMENT OF THE ISSUES

Plaintiff-appellee/cross-appellant S.C. was a freshman in high school when a video showing a student engaged in allegedly nonconsensual sexual activity with S.C. in an empty classroom began circulating among the student body without S.C.'s assent. As soon as the school launched an investigation into the video and the activity it depicted, including by speaking to S.C. and S.C.'s mother, other students repeatedly harassed S.C. online and sent her violent threats. S.C. attended school from home and ultimately transferred to a different school district because of this harassment.

- 3 -

S.C. brought suit under Title IX, alleging that school officials had been deliberately indifferent to multiple forms of sex-based harassment, including her alleged assault by the other student and the threats she experienced for cooperating with the school's investigation.  At summary judgment, the district court found most of S.C.'s theories of relief foreclosed under newly issued circuit precedent. Later, the court held a bench trial on S.C.'s sole remaining deliberate-indifference claim regarding retaliatory harassment and entered judgment in her favor.  The United States will address the following questions[1]:

1.  Whether the district court correctly held that school officials violated Title IX by responding with deliberate indifference to retaliatory harassment that they knew S.C. was suffering for having assisted the school's investigation into an alleged sexual assault, and this permitted the harassment to continue and resulted in S.C's exclusion from school programs and activities.

2.  Whether the district court's dismissal, under *Kollaritsch* v. *Michigan State University Board of Trustees*, 944 F.3d 613 (6th Cir. 2019), cert. denied, 141 S. Ct. 554 (2020), of S.C.'s other Title IX claims alleging deliberate indifference by high school officials should be vacated and remanded in light of recent circuit authority.

---

[1]  The United States takes no position on any other issue in this appeal.

- 4 -

3.  Whether the district court's damages award, which included damages for

emotional distress, should be remanded for reconsideration in light of *Cummings* v.

*Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562 (2022).

## STATEMENT OF THE CASE

*1.    Deliberate-Indifference Claims Under Title IX*

Title IX imposes a "broadly written general prohibition" on "sex

discrimination by recipients of federal education funding."  *Jackson* v.

*Birmingham Bd. of Educ.*, 544 U.S. 167, 173, 175 (2005).  Specifically, it provides

that "[n]o person  * * *  shall, on the basis of sex, be excluded from participation

in, be denied the benefits of, or be subjected to discrimination under any education

program or activity receiving Federal financial assistance."  20 U.S.C. 1681(a).

A school may be liable for damages in a private suit under this provision

when school officials have "actual knowledge" of, but respond with deliberate

indifference to, sexual harassment of a student that is "so severe, pervasive, and

objectively offensive that it can be said to deprive the victim[] of access to the

educational opportunities or benefits provided by the school," and this deliberately

indifferent response "subject[s]" the student to discrimination.  *Davis* v. *Monroe*

*Cnty. Bd. of Educ.*, 526 U.S. 629, 644, 650 (1999) (brackets in original).

"[S]tudent-on-student retaliatory harassment" can form the basis for a Title IX

claim where it occurs because the target of the conduct has spoken out against sex

- 5 -

discrimination or reported it to school officials. *Feminist Majority Found.* v.

*Hurley*, 911 F.3d 674, 695 (4th Cir. 2018); see also *Jackson*, 544 U.S. at 179 n.3.

A school's response evinces deliberate indifference if it is "clearly unreasonable in

light of the known circumstances." *Davis*, 526 U.S. at 648.

2.    *Factual Background*[2]

    a.    *The Practice Of "Exposing" At Metropolitan Nashville Public
        Schools*

        Since at least 2014, students in Metropolitan Nashville Public Schools have

engaged in a practice called "exposing," in which photos and videos showing

students engaged in sexual activity—at times, on school campuses—were shared

with others without the participants' consent.  First Summary Judgment Opinion,

R. 101, PageID ## 4111-4112, 4118, 4122, 4124.  While male participants in such

photos and videos were treated by peers as "the most popular person in school,"

female participants were "bullied, mocked, ridiculed, [and] made fun of."  Post-

Trial Opinion, R. 182, PageID # 5149 (brackets in original; citation omitted).

        "[E]xposing" was a "widespread problem" in the school district.  Post-Trial

Opinion, R. 182, PageID # 5149.  It was "common knowledge among students that

[the practice] occurred."  Post-Trial Opinion, R. 182, PageID # 5149.  Indeed, a

---

[2]  By request of the parties, the trial transcripts and exhibits were sealed
because the case involves allegations of sexual activity involving minor children.
Order, R. 165, PageID # 4476.  Accordingly, this summary is limited to the facts as
described in the district court's orders and its post-trial findings.

- 6 -

website named "615exposed" existed "specifically for th[e] purpose" of exposing students in "the Nashville area." First Summary Judgment Opinion, R. 101, PageID # 4124.

*b.*     *S.C. Suffers Retaliatory Harassment For Assisting Her School's Investigation Into An Alleged Sexual Assault And Related Video*

S.C. was a freshman at Hunters Lane High School in the Metropolitan Nashville school district when a schoolmate, J.J., allegedly forced her to engage in nonconsensual oral and penetrative sex in an empty classroom during lunchtime. Post-Trial Opinion, R. 182, PageID ## 5154-5155. A female student, S.D., recorded a portion of the incident using a cell phone. Post-Trial Opinion, R. 182, PageID # 5155. Later that day, S.C. learned that students had begun circulating the video on their devices and online. Post-Trial Opinion, R. 182, PageID # 5156.[3]

That evening, the school's executive principal became aware of the video, which had been posted on multiple social media platforms. Post-Trial Opinion, R. 182, PageID # 5159. The principal began "making plans regarding how the school could respond to the situation," and someone from the school arranged for S.C. and her mother to meet with school officials the next day. Post-Trial Opinion, R. 182,

---

[3] The district court summarized significant evidence suggesting that the sexual activity between J.J. and S.C. had been nonconsensual. See, *e.g.*, Post-Trial Opinion, R. 182, PageID ## 5162, 5165 (recounting trial testimony by S.C. and her mother and quoting S.C.'s written statement about the incident). But the court declined to make a formal finding on this issue, given its lack of relevance to the claim S.C. pursued at trial. Post-Trial Opinion, R. 182, PageID ## 5157-5159.

PageID ## 5159-5160. "[W]ord of the planned meeting got out among S.C.'s peers," and students began sending S.C. messages via social media "in an apparent attempt to discourage [her] participation in [the school's] investigation." Post-Trial Opinion, R. 182, PageID # 5160. Some students even "threaten[ed] reprisal if S.C. incriminated anyone." Post-Trial Opinion, R. 182, PageID # 5160.

The next morning, S.C. and her mother arrived at S.C.'s school and spoke with an awaiting police detective. Post-Trial Opinion, R. 182, PageID ## 5161-5162. S.C. told the detective about the threats she had received, including one which warned "that her mother would be shot as she entered the school building." Post-Trial Opinion, R. 182, PageID # 5163. S.C. also gave the detective the name of at least one student who had sent some of the threats. Post-Trial Opinion, R. 182, PageID # 5163. The detective "did not take the threats seriously and turned to suggesting that S.C. had criminally participated in creating child pornography." Post-Trial Opinion, R. 182, PageID # 5163.

After their meeting with the detective, S.C. and her mother spoke with the school's executive principal and told her about the threats S.C. had received. See Post-Trial Opinion, R. 182, PageID ## 5165, 5167-5168, 5170. S.C.'s mother also informed the principal that S.C.'s sister, who was waiting in the school parking lot and "providing updates by text message," had received threats. Post-Trial Opinion, R. 182, PageID ## 5167-5168. Additionally, S.C.'s mother gave the

principal a list of individuals who had sent threatening messages through social media. Post-Trial Opinion, R. 182, PageID ## 5161, 5167 & n.14. However, the principal "did not ask any follow-up questions about the content of the threats, nor did she seek any kind of detailed statement regarding the threats." Post-Trial Opinion, R. 182, PageID # 5168.

Based on her belief that S.C. and J.J. had engaged in consensual sexual activity on school grounds, the executive principal suspended each student for three days. Post-Trial Opinion, R. 182, PageID ## 5165-5167, 5170. During the suspension, S.C.'s mother spoke with the school's assistant principal and "complained again about the threats S.C. had been receiving from other students." Post-Trial Opinion, R. 182, PageID # 5171. The assistant principal responded that S.C.'s mother would have to "take it up with the detective." Post-Trial Opinion, R. 182, PageID # 5171 (citation omitted).

After S.C. completed the suspension, she did not return to in-person classes. Post-Trial Opinion, R. 182, PageID # 5172. Rather, with the video that students circulated "continu[ing] to hang over [her] head," S.C. decided to continue her education through the school's "Homebound" program, which permitted "students with medical issues" to "stud[y] exclusively from home." Post-Trial Opinion, R. 182, PageID # 5172. Meanwhile, S.C. "continued to receive threats and harassment from some of the students whom she and her mother had identified to

[the executive principal]."  Post-Trial Opinion, R. 182, PageID # 5172.  One

student sent a "menacing" text message suggesting that everyone was "waiting for

[S.C.] to come back" to school.  Post-Trial Opinion, R. 182, PageID # 5173

(brackets in original; citation omitted).  A friend of that student "made similar

remarks and threatened that S.C.'s mother would be killed for S.C.'s cooperation

in the investigation."  Post-Trial Opinion, R. 182, PageID # 5173.  These threats

"occurred while S.C. was enrolled [in the school]," "continued well past the end of

the school year," and were "expressly connected" to "whether S.C. would

cooperate in [the school's] investigation" and return "as an in-person student."

Post-Trial Opinion, R. 182, PageID ## 5172-5173.

Before the next school year commenced, S.C. transferred out of the school

district.  Post-Trial Opinion, R. 182, PageID # 5173.

*3.    Procedural History*

a. S.C.'s mother filed suit on her daughter's behalf in the Middle District of

Tennessee against defendant-appellant/cross-appellee Metropolitan Government of

Nashville and Davidson County.  Complaint, R. 1, PageID # 2.  As relevant here,

S.C.'s mother brought multiple Title IX claims alleging deliberate indifference by

school officials, including their purported deliberate indifference to "the system-

wide practice of 'exposing,'" "the sexual assault" of S.C. by J.J., and "the

continuing harassment" that ensued as students retaliated against S.C. for

participating in the school's investigation of the video.  Amended Complaint, R. 6, PageID ## 116-118.

The district court consolidated S.C.'s case with three others brought by female students in S.C.'s school district who raised similar claims against the county.  First Summary Judgment Opinion, R. 101, PageID ## 4108, 4111-4122. The county moved for summary judgment in all four cases.  First Summary Judgment Opinion, R. 101, PageID # 4108.  Apart from one claim in one of the consolidated cases, the district court rejected the county's arguments and denied its motions.  First Summary Judgment Opinion, R. 101, PageID ## 4127-4158, 4163.

Seven months later, this Court issued an opinion in *Kollaritsch* v. *Michigan State University Board of Trustees*, 944 F.3d 613 (6th Cir. 2019), cert. denied, 141 S. Ct. 554 (2020).  In that opinion, the Court held that where university officials know that a student has suffered student-on-student sexual harassment but respond with deliberate indifference, Title IX permits damages only if those officials' deliberate indifference "resulted in *further* actionable sexual harassment against" the student (post-notice harassment).  *Kollaritsch*, 944 F.3d at 618.

Following issuance of this Court's opinion, the district court reconsidered the county's motions in light of *Kollaritsch* and issued a new summary-judgment opinion that dismissed almost all of the plaintiffs' claims.  Second Summary Judgment Opinion, R. 124, PageID ## 4362-4367.  In particular, the court

dismissed plaintiffs' claims alleging that school officials had been deliberately indifferent to the practice of "exposing," as well as most of plaintiffs' claims alleging that officials had been deliberately indifferent to sexual assaults that the plaintiffs allegedly suffered, all for lack of post-notice harassment. Second Summary Judgment Opinion, R. 124, PageID ## 4361-4373. However, the court concluded that, even after *Kollaritsch*, S.C. maintained a viable Title IX claim. Specifically, it found that although *Kollaritsch* barred S.C. from establishing liability based on school officials' "alleged mishandling" of the school's response to her alleged sexual assault by J.J., S.C. might still have a viable deliberate-indifference claim based on "post-incident harassment"—specifically, the threats and retaliatory harassment that S.C. suffered for cooperating with the school's investigation. Second Summary Judgment Opinion, R. 124, PageID # 4371.

The court held a two-day bench trial on that sole remaining theory of relief. Post-Trial Opinion, R. 182, PageID # 5144. The question at trial was whether officials at S.C.'s school "had actual knowledge of actionable sexual harassment" of S.C., but responded with deliberate indifference, thus "result[ing] in" post-notice harassment. Post-Trial Opinion, R. 182, PageID ## 5185-5186 (quoting *Kollartisch*, 944 F.3d at 618) (internal quotation marks omitted).

The district court found the county liable for a Title IX violation upon determining that S.C. had made such a showing. Regarding actual knowledge of

actionable sexual harassment, the court pointed to school officials' awareness that a video of J.J. and S.C. engaged in sexual activity had circulated among students "against [S.C.'s] wishes."  Post-Trial Opinion, R. 182, PageID # 5186.  Turning to whether school officials had responded with deliberate indifference, the court did not focus on officials' response to students' circulation of the video; rather, the court evaluated officials' response to the "ongoing violent threats" that students sent to S.C. seeking to deter her participation in the school's investigation.  Post-Trial Opinion, R. 182, PageID # 5188.  The court found *this* response to have been deliberately indifferent, noting that officials "did very little, if anything, to prevent" such harassment from continuing.  Post-Trial Opinion, R. 182, PageID # 5188.  Finally, the court concluded that the threats constituted post-notice harassment, as they "continued" even after school officials learned that such conduct was occurring.  Post-Trial Opinion, R. 182, PageID # 5189 (citation omitted).

Based on these findings, the court awarded S.C. $75,000 in damages to compensate her for "lost educational services and some non-monetary damages arising out of pain and suffering."  Post-Trial Opinion, R. 182, PageID # 5197 (footnote omitted).  The county timely appealed (Notice of Appeal, R. 187, PageID

# 5205), and S.C. cross-appealed (Notice of Cross-Appeal, R. 197, PageID #

5371).

b.   While the parties' appeals were pending, this Court issued an opinion in

*Doe* v. *Metropolitan Government of Nashville & Davidson County*, 35 F.4th 459

(6th Cir. 2022), petition for cert. pending, No. 22-423 (filed Nov. 3, 2022).   The

appellants in *Doe* were two of the plaintiffs whose claims had been consolidated

with S.C.'s and then dismissed under *Kollaritsch* in the district court's second

summary-judgment order.   *Id.* at 461-463.   In *Doe*, this Court vacated the district

court's order as to those two plaintiffs, holding that *Kollaritsch*'s requirement of

post-notice harassment does not apply to Title IX deliberate-indifference claims

that arise in the high-school context.   *Id.* at 467-468.

## SUMMARY OF ARGUMENT

1.   The Court should affirm the district court's Title IX liability

determination on S.C.'s claim that school officials were deliberately indifferent to

threats and harassment she experienced for assisting her high school's

investigation into a video that students circulated showing J.J. and S.C. engaged in

sexual activity.   As the court's factual findings demonstrate, S.C. proved all of the

elements of this claim at trial—namely, that school officials had actual knowledge

of, but responded with deliberate indifference to, retaliatory harassment of S.C.

that was severe, pervasive, and objectively offensive, thus subjecting S.C. to

- 14 -

discrimination and leaving her with a lack of access to educational opportunities or benefits provided by the school. *Davis* v. *Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 644, 650 (1999).

None of the county's arguments on appeal shows otherwise. First, school officials exercised substantial control over "the context in which [students'] harassment [of S.C.] occurred," even though the threats were sent via social media. Br. 30 (citing *Davis*, 526 U.S. at 645).[4] Indeed, the district court recognized school officials' successful efforts in stemming students' circulation of the video, including by investigating the conduct and imposing discipline, and these actions are strongly suggestive of officials' substantial control over the analogous context in which the students' threats were sent. Second, under Supreme Court case law, students' threats to S.C. qualify as sex-based harassment because S.C. incurred this treatment for having cooperated in the school's investigation into alleged sexual harassment. The fact that the threats also warned of violence to other members of S.C.'s family does not alter this analysis. Third, the court correctly found that the school's nonexistent response to the threats constituted deliberate indifference because it was clearly unreasonable for officials to refrain from taking action when the threats impeded S.C.'s access to educational programs and activities. And fourth, the county's selective quoting of the district court's opinion fails to show

---

[4] "Br. __" refers to county's opening brief on appeal.

that the court evaluated school officials' response using a "reasonableness" standard, as opposed to a deliberate-indifference standard. Br. 24 (citation omitted).

2. The Court should vacate the district court's dismissal of S.C.'s other Title IX claims and remand for the court to reconsider those claims, in addition to the amount of S.C.'s damages award. The district court dismissed S.C.'s other claims because they did not involve allegations of post-notice harassment, which the court believed was necessary under *Kollaritsch* v. *Michigan State University Board of Trustees*, 944 F.3d 613 (6th Cir. 2019). But this Court recently clarified that *Kollaritsch*'s requirement of post-notice harassment does not apply to claims that, as here, arise in the high-school context. Accordingly, vacatur and remand for reconsideration is warranted.

Remand for reconsideration of S.C.'s damages award also is appropriate. In *Cummings* v. *Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562 (2022), the Supreme Court held that compensatory damages for emotional distress are not recoverable under three Spending Clause antidiscrimination statutes. *Id.* at 1576. Although *Cummings* was not a Title IX case, remand still is warranted to permit the district court to consider, in the first instance, whether *Cummings* affects the scope of relief available to S.C. under Title IX, and if it does, whether S.C. seeks compensation for injuries that continue to be recoverable after *Cummings*.

# ARGUMENT

# I

## THE COURT SHOULD AFFIRM THE DISTRICT COURT'S RULING IN S.C.'S FAVOR ON HER DELIBERATE-INDIFFERENCE CLAIM BASED ON STUDENTS' RETALIATORY THREATS AND HARASSMENT

A.    *The District Court's Findings Of Fact Show That S.C. Proved The Elements Of Her Claim*

This Court should affirm the district court's Title IX liability determination in S.C.'s favor on her claim that school officials showed deliberate indifference to students' retaliatory threats and harassment.  In so doing, this Court should affirm on slightly alternate grounds because of one misstep in the district court's analysis.

Specifically, when the court held that S.C. had proven that school officials had "actual knowledge" of actionable sexual harassment, the court relied on its finding that officials knew a video depicting sexual activity between J.J. and S.C. was circulating among students without S.C.'s consent.  Post-Trial Opinion, R. 182, PageID # 5186.  This reliance was error where the court found that S.C. had proven the other elements of her claim based on officials' deliberate indifference to the threats and harassment she suffered for participating in the school's investigation of the video.  Post-Trial Opinion, R. 182, PageID ## 5188-5191.  The relevant question regarding actual knowledge for purposes of *this* theory of relief was whether officials knew that S.C. was experiencing such retaliatory conduct.

Despite the district court's misplaced focus on school officials' knowledge of the video that students were circulating without S.C.'s consent, its ruling in S.C.'s favor on this claim should be affirmed. The court's factual findings—none of which the county challenges as clearly erroneous (see Br. 15-31)—make clear that S.C. satisfied all of the requirements of her deliberate-indifference claim, including knowledge by officials that S.C. was experiencing retaliatory harassment. See *Beydoun* v. *Sessions*, 871 F.3d 459, 466 (6th Cir. 2017) (emphasizing that an appellate court may "affirm the judgment of a district court on any basis presented by the record").

i. First, the harassment S.C. suffered due to her participation in the school's investigation of the video was so severe, pervasive, and objectively offensive that it deprived her of access to the school's educational opportunities or benefits. See *Davis* v. *Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 644, 650 (1999). Before the meeting between S.C., her mother, and the school's executive principal, students sent S.C. and her family "ongoing violent threats," one of which warned that if S.C. cooperated in the school's investigation, "her mother would be shot as she entered the school building." Post-Trial Opinion, R. 182, PageID ## 5163, 5188. During the meeting, students continued sending S.C.'s family harassing messages. Post-Trial Opinion, R. 182, PageID ## 5164, 5167-5168. And afterwards, S.C. was "expressly" warned by other students that she could "fac[e] reprisal if she

- 18 -

returned to school in person." Post-Trial Opinion, R. 182, PageID ## 5172-5173, 5187. As a result of this "manifestly violent" harassment, S.C. was effectively excluded from her classes, opting to complete the rest of her school year remotely and ultimately transferring out of the district altogether. Post-Trial Opinion, R. 182, PageID ## 5170, 5173. This evidence suffices to show that S.C. suffered severe, pervasive, and objectively offensive harassment that inflicted a cognizable Title IX injury.

ii. Second, these threats constituted sex-based harassment. See 20 U.S.C. 1681(a). This straightforward conclusion follows from the Supreme Court's decision in *Jackson* v. *Birmingham Board of Education*, 544 U.S. 167 (2005). That case involved the firing of a high school girls' basketball coach after he objected to inequalities in the funding and resources provided to his team. *Id.* at 171-172. In holding that the coach stated a viable claim under Title IX, the Court recognized that "retaliation in response to a complaint about sex discrimination is 'discrimination' 'on the basis of sex.'" *Id.* at 179 n.3. The Court found such a conclusion "clear[]" based on "the statute's text" because, in such a situation, a person has been intentionally "subjected to differential treatment" based on "the nature of the complaint"—namely, "an allegation of sex discrimination." *Id.* at 174, 178 & n.2.

*Jackson*'s logic compels a similar conclusion here.  S.C. suffered retaliatory threats and harassment because she assisted her school's investigation into alleged sexual harassment:  J.J.'s alleged sexual assault of S.C. in a classroom and students' circulation of a video of the incident.  Post-Trial Opinion, R. 182, PageID ## 5149, 5162, 5165.  Indeed, the specific intention with which the threats were made—to "discourag[e] [S.C.] from seeking the school's assistance in combating gender-oriented harassment" (Post-Trial Opinion, R. 182, PageID # 5187)—makes the sex-based nature of the harassment abundantly clear.  In a comparable situation and citing *Jackson*, the Tenth Circuit held that retaliatory student-on-student harassment a plaintiff allegedly suffered for reporting a sexual assault amounted to "harassment  *  *  *  on the basis of sex."  *Doe* v. *School Dist. No. 1, Denver*, 970 F.3d 1300, 1305, 1311 (10th Cir. 2020).  The same outcome is warranted in this case.

iii.  Third, school officials had actual knowledge that S.C. was experiencing such harassment.  See *Davis*, 526 U.S. at 644.  As the district court found, S.C. and her mother directly told the school's executive principal about the threats.  See Post-Trial Opinion, R. 182, PageID # 5170 (deeming it "implausible that [S.C. and her mother] did not mention the threats at all").  The court also found that S.C.'s mother had given the principal a list of students who had threatened S.C. over social media.  See Post-Trial Opinion, R. 182, PageID # 5167 n.14 (finding that the

principal "received the list and was informed that it involved post-incident harassment"). And S.C.'s mother continued to raise the issue when speaking with the school's assistant principal in the days that followed, "complain[ing] again about the threats S.C. had been receiving." Post-Trial Opinion, R. 182, PageID # 5171. As the district court rightly concluded, this evidence showed that "S.C. and her mother conveyed the existence, nature, and extent of the threats to [school] administrators with at least enough clarity that failing to act on those threats amounted to a 'refus[al] to take action to bring the recipient into compliance' with Title IX." Post-Trial Opinion, R. 182, PageID # 5189 (quoting *Foster* v. *Board of Regents of Univ. of Mich.*, 982 F.3d 960, 968 (6th Cir. 2020) (en banc)) (second brackets in original).

iv. Fourth, despite their knowledge of the threats and harassment S.C. was experiencing, school officials responded with deliberate indifference. See *Feminist Majority Found.* v. *Hurley*, 911 F.3d 674, 695 (4th Cir. 2018) (holding that "an educational institution can be liable for acting with deliberate indifference toward known instances of student-on-student retaliatory harassment"). As the district court found, school officials "improperly confined their focus to the initial sexual encounter [between J.J. and S.C.] and the video" of the incident. Post-Trial Opinion, R. 182, PageID # 5190. This came "at the expense of protecting S.C. from the onslaught of harassment that followed," as officials "did very little, if

anything, to prevent the ongoing violent threats." Post-Trial Opinion, R. 182, PageID ## 5188, 5190; see also Post-Trial Opinion, R. 182, PageID # 5188 (finding that officials responded to "the video's existence and the fact that students had had sex on campus" but "did not address the ongoing threats"). Rather, officials "deferred" to the police detective who was investigating the video and "assumed that any threats were his responsibility," despite the "plain[] connect[ion]" between the threats and "the school environment." Post-Trial Opinion, R. 182, PageID ## 5188, 5190. Because officials were "aware" of S.C.'s plight but "cho[se] not to use any of the tools available [to them] to do anything about it," the district court correctly found that officials' inaction constituted "paradigmatic * * * deliberate indifference." Post-Trial Opinion, R. 182, PageID # 5188.

v. Finally, school officials' deliberate indifference subjected S.C. to discrimination by "caus[ing] [her] to undergo" further (post-notice) harassment. *Davis*, 526 U.S. at 645 (citation omitted); see also *id.* at 644-645 (noting that officials subject a student to discrimination if they cause the student to undergo further harassment or make the student liable or vulnerable to further harassment). After meeting with the school's executive principal, S.C. "continued to receive threats and harassment from" students, including some students identified on the list of harassers that S.C.'s mother had compiled and given to the executive

- 22 -

principal.  Post-Trial Opinion, R. 182, PageID # 5172.  This harassment "continued well past the end of the school year."  Post-Trial Opinion, R. 182, PageID ## 5172-5173.

School officials could have intervened to stop the harassment, just as they had done with the nonconsensual circulation of the video.  Officials "took the video  *  *  *  seriously" and successfully "discourag[ed] students from  *  *  * circulating the video further."  Post-Trial Opinion, R. 182, PageID # 5190; see also pp. 23-24, *infra*.  As the district court found, had officials "tak[en] the threats seriously, as well," there would have been "a similar likelihood of success" of "prevent[ing] at least a significant amount of the additional actionable harassment that S.C. endured."  Post-Trial Opinion, R. 182, PageID # 5190.  The evidence at trial, and the court's findings based on this evidence, thus establish a sufficient causal link between officials' deliberately indifferent response and the continuing harassment that S.C. suffered.

B.    *The County's Arguments Are Meritless*

Despite S.C.'s showing on each of these elements, the county offers a number of arguments on appeal for why the district court's ruling should be reversed.  None is persuasive.

1.  First, the county argues that school officials lacked "substantial control" over the context in which the harassment occurred.  Br. 20-21, 29-30 (citation

- 23 -

omitted).  Under *Davis*, a plaintiff asserting a Title IX claim based on deliberate

indifference to student-on-student harassment must show, as a threshold matter,

that the school "exercise[d] substantial control over both the harasser and the

context in which the known harassment occur[red]."  *Davis*, 526 U.S. at 645.

While the county does not dispute that school officials had substantial control over

the students who threatened and harassed S.C., it argues that those officials lacked

substantial control over the context in which the harassment occurred because

students sent the threats "through social media, such as Snapchat and Instagram."

Br. 20-21, 29-30 (citation omitted).

The county errs in suggesting that a school cannot, as a matter of law,

exercise substantial control over student messages sent via social media.  See

*Feminist Majority Found.*, 911 F.3d at 680, 687-689 (concluding that a university

exercised sufficient control where students sent threatening messages through "a

now-defunct social media application").  Indeed, *Davis* makes clear that assessing

substantial control is a functional and contextual inquiry that considers a variety of

factors.  This includes not only the time and location of the harassment, but also

the nature of the educational activity at issue and, "[m]ore importantly," the scope

of the school's disciplinary authority over the harasser.  *Davis*, 526 U.S. at 646-

647.

- 24 -

Here, applying such a functional and contextual analysis, school officials'
substantial control is evident from their fruitful efforts in combatting other
harassment of S.C. that students committed electronically and over social media—
namely, their distribution of the video without S.C.'s consent.  As the county
describes in its opening brief, officials "went student to student," checking to see if
they had "the video file on their phones," and if so, making them "delete the file."
Br. 22.  Officials took additional prophylactic measures to "stop [students] from
sharing" the video, including "issuing three-day suspensions where they believed it
was warranted[] and contacting parents."  Br. 22.

These actions reflect school officials' substantial control over students'
electronic activities and communications, at least where those activities and
communications directly impacted other members of the student body.  Moreover,
officials' disciplinary authority over S.C.'s harassers provided a means by which
they could have "corrected the hostile environment" and deterred students from
engaging in further harassing or threatening activity, which is also indicative of
substantial control.  *Feminist Majority Found.*, 911 F.3d at 688; see also *Davis*,
526 U.S. at 644 (suggesting that "control over the alleged harassment" will not be
found where a school "lacks the authority to take remedial action").  The
circumstances here thus differ significantly from those in *Foster*, where this Court
suggested that it was "beyond the  *  *  *  control" of a university to prevent a

participant in an "off-site graduate program[] conducted at a hotel, over 2,000 miles from a campus, for mid-career executives with an average age of 40" from posting "an offensive comment about" another participant "on Facebook." *Foster*, 982 F.3d at 966, 970; see also Br. 29 (citing *Foster*).

Finally, the county wrongly argues that substantial control cannot be found because students purportedly did not send their threats "during school hours" or while S.C. was "on school grounds." Br. 29 (citation omitted). Such a cramped understanding of substantial control would preclude Title IX liability where, as here, a student receives threats of such a "manifestly violent" and "menacing" nature that she becomes too fearful to return to school. Post-Trial Opinion, R. 182, PageID ## 5170, 5173 (citation omitted). That cannot be the law.

2. The county offers three additional arguments for why S.C. failed to prove her deliberate-indifference claim, but they fare no better. First, the county argues that the threats did not constitute "gender-oriented conduct" because the messages warned of violence to "S.C.'s entire family." Br. 28-29. But as explained above, this element of S.C.'s claim is satisfied because she was subjected to threats based on her "cooperation with the school's investigation" into her alleged sexual assault and the video of the encounter. Post-Trial Opinion, R. 182, PageID # 5185; see also pp. 18-19, *supra*. The conclusion is no different simply because students were so intent on punishing S.C. for "seeking the school's assistance in combatting

gender-oriented harassment" that they also targeted other members of S.C.'s family.  Post-Trial Opinion, R. 182, PageID # 5187.

Next, the county contends that the threats were so violent in nature that it was not "clearly unreasonable" for school officials to refrain from taking any action themselves and instead leave any response in the hands of the police.  Br. 30-31; see also Br. 15.  As an initial matter, this argument implicitly concedes that, as the district court found, officials did nothing to address the threats.  See Post-Trial Opinion, R. 182, PageID # 5188.

Nor did the court err in concluding that this inaction constituted deliberate indifference.  The school officials here abdicated their "duty to respond" to known acts of student-on-student harassment, *Davis*, 526 U.S. at 644, and assumed that the police detective would handle things, despite the "express[] tie[]" between the threats S.C. received and the possibility that she would "fac[e] reprisal if she returned to school in person" (Post-Trial Opinion, R. 182, PageID # 5187). Officials remained apathetic, even as the threats, "in effect, create[d] a barrier between [S.C.] and [her] education."  Post-Trial Opinion, R. 182, PageID # 5187. Separate and apart from whether the detective decided that the threats raised concerns from a criminal perspective, the deprivation of educational access that S.C. suffered and that Title IX seeks to prevent warranted a response by school

officials.  As the court correctly found, their undisputed failure to provide such a response amounted to deliberate indifference.

Finally, the county contends that the district court erred by analyzing school officials' response to the threats under a "'reasonableness' standard" (Br. 24 (citation omitted)), instead of asking whether that response was "clearly unreasonable in light of the known circumstances" (Br. 25 (quoting *Davis*, 526 U.S. at 648)).  Not so.  *Davis*'s discussion of a "clearly unreasonable" response by school officials simply describes the standard for finding deliberate indifference. See *Davis*, 526 U.S. at 648.  The district court applied this standard and concluded that school officials' response qualified as deliberate indifference.  Post-Trial Opinion, R. 182, PageID ## 5188, 5190-5191.  Specifically, the court found that officials did "very little, if anything, to prevent" students from continuing to threaten and harass S.C.  Post-Trial Opinion, R. 182, PageID # 5188.  And as the court correctly concluded, "'d[oing] almost nothing' about a known harassment problem is the paradigmatic definition of deliberate indifference."  Post-Trial Opinion, R. 182, PageID # 5188 (brackets in original) (quoting *Foster*, 982 F.3d at 965).

The county's attempt to cherry pick instances when the court used the term "reasonable"—even though none of those instances shows the court finding liability based on the lack of a reasonable response (see Br. 24 (citing Post-Trial

- 28 -

Opinion, R. 182, PageID ## 5143, 5157-5158, 5169))—fails to demonstrate that the court did anything other than apply the applicable standard under *Davis*.

## II

## THE COURT SHOULD VACATE THE DISMISSAL OF S.C.'S OTHER TITLE IX CLAIMS AND REMAND FOR RECONSIDERATION OF THOSE CLAIMS AND THE DISTRICT COURT'S DAMAGES AWARD

While this Court should affirm the district court's liability determination for the reasons discussed above, the Court should remand for reconsideration of two aspects of the case.

First, the Court should vacate the portion of the district court's second summary-judgment ruling that dismissed S.C.'s claims alleging deliberate indifference by school officials to the practice of "exposing," and to S.C.'s alleged sexual assault by J.J. The district court dismissed both theories of relief under *Kollaritsch*, concluding that they failed for lack of post-notice harassment. Second Summary Judgment Opinion, R. 124, PageID ## 4362-4365, 4371. However, this Court subsequently clarified in *Doe* v. *Metropolitan Government of Nashville & Davidson County*, 35 F.4th 459 (6th Cir. 2022), petition for cert. pending, No. 22-423 (filed Nov. 3, 2022), that *Kollaritsch*'s requirement of post-notice harassment does not apply to deliberate-indifference claims that arise in the high-school context, as S.C.'s claims do. *Id.* at 467-468. Because S.C. challenges the same summary-judgment ruling and reasoning that was at issue in *Doe*, the Court should

- 29 -

vacate the district court's second summary-judgment ruling as to S.C. and remand for reconsideration, just as it did in *Doe*. *Id.* at 468.

Second, the Court should remand for the district court to reconsider S.C.'s damages award under *Cummings*. In that opinion, the Supreme Court held that compensatory damages for emotional distress "are not recoverable under the [three] Spending Clause antidiscrimination statutes" that it "consider[ed]" in the case. *Cummings* v. *Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562, 1576 (2022). Although Title IX was not one of those statutes, it also represents Spending Clause legislation, see *id.* at 1569, and thus it would be appropriate to remand for the district court to consider what impact, if any, *Cummings* might have on the scope of damages available to S.C. under Title IX. Many of the injuries for which S.C. seeks to recover and for which the district court awarded damages were not at issue in *Cummings* and thus still are likely recoverable. This includes compensation for lost educational benefits as a result of school officials' deliberate indifference and reimbursement of medical expenses. Depending on the resolution of S.C.'s other deliberate-indifference claims, it also could include compensation for pain and suffering that S.C. experienced as a result of any physical (as opposed to emotional) injuries. These questions regarding *Cummings*'s scope and impact would be best decided by the district court in the first instance.

## CONCLUSION

For the foregoing reasons, the Court should affirm the district court's ruling in S.C.'s favor on her Title IX deliberate-indifference claim based on students' retaliatory threats and harassment.  The Court should vacate the district court's dismissal of S.C.'s other Title IX claims and remand for the court to reconsider those claims, as well as S.C.'s damages award.

Respectfully submitted,

| | |
|---|---|
| LISA BROWN | KRISTEN CLARKE |
|   General Counsel |   Assistant Attorney General |
| | |
| VANESSA SANTOS | s/ Jason Lee |
|   Attorney | ERIN H. FLYNN |
|   U.S. Department of Education | JASON LEE |
|   Office of the General Counsel |   Attorneys |
|   400 Maryland Ave., S.W. |   U.S. Department of Justice |
|   Washington, D.C.  20202-0001 |   Civil Rights Division |
| |   Appellate Section |
| |   Ben Franklin Station |
| |   P.O. Box 14403 |
| |   Washington, D.C.  20044-4403 |
| |   (202) 598-1317 |

## CERTIFICATE OF COMPLIANCE

I certify that the attached BRIEF FOR THE UNITED STATES AS
AMICUS CURIAE SUPPORTING PLAINTIFF-APPELLEE/CROSS-
APPELLANT AND URGING AFFIRMANCE IN PART AND VACATUR IN
PART ON THE ISSUES ADDRESSED HEREIN:

(1)  complies with the type-volume limitation of Federal Rules of Appellate
Procedure 29(a)(5) and 32(a)(7)(B) because it contains 6,438 words, excluding the
parts of the brief exempted by Federal Rule of Appellate Procedure 32(f); and

(2)  complies with the typeface requirements of Federal Rule of Appellate
Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate
Procedure 32(a)(6) because it has been prepared in a proportionally spaced
typeface using Word 2019, in 14-point Times New Roman font.

s/ Jason Lee
JASON LEE
Attorney

Date:  December 12, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2022, I electronically filed the foregoing BRIEF FOR THE UNITED STATES AS AMICUS CURIAE SUPPORTING PLAINTIFF-APPELLEE/CROSS-APPELLANT AND URGING AFFIRMANCE IN PART AND VACATUR IN PART ON THE ISSUES ADDRESSED HEREIN with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.  I further certify that four paper copies identical to the electronically filed brief will be mailed to the Clerk of the Court by Federal Express.

s/ Jason Lee_____
JASON LEE
 Attorney

# ADDENDUM

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| Record Entry Number | Description | PageID # Range |
|---|---|---|
| 1 | Plaintiff's Complaint | 1-10 |
| 6 | Plaintiff's Amended Complaint | 108-122 |
| 101 | District Court's Memorandum Opinion adjudicating Defendant's motions for summary judgment (First Summary Judgment Opinion) | 4106-4163 |
| 124 | District Court's Memorandum Opinion adjudicating Defendant's motions for summary judgment on reconsideration in light of *Kollaritsch* v. *Michigan State University Board of Trustees*, 944 F.3d 613 (6th Cir. 2019) (Second Summary Judgment Opinion) | 4333-4375 |
| 165 | Order granting Joint Motion to Seal Trial Testimony, Depositions Filed at Trial, and Trial Exhibits | 4476 |
| 182 | District Court's Findings of Fact and Conclusions of Law (Post-Trial Opinion) | 5134-5198 |
| 187 | Defendant's Notice of Appeal | 5205-5206 |
| 197 | Plaintiff's Notice of Cross-Appeal | 5371-5372 |